**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

IN RE:                                                        <u>**MEMORANDUM OF**</u>
                                                             <u>**DECISION AND ORDER**</u>
INTERNATIONAL TOTAL SERVICES, INC.                           06 CV 5380 (ADS)

                        Consolidated Debtors.

---------------------------------------------------------X


<u>**APPEARANCES**</u>**:**

**COHEN ROSENTHAL & KRAMER LLP**
Co-Counsel for the Appellant Robert A. Weitzel
The Hoyt Block Building, Suite 400
700 West St Clair Avenue
Cleveland, Ohio 44113
          By:     Joshua R. Cohen, Esq.,
                  Ellen M. Kramer, Esq., of Counsel

**ZAGRANS LAW FIRM CO., LPA**
Co-Counsel for the Appellant Robert A. Weitzel
5338 Meadow Lane Court
Elyria, Ohio 44035-1469
          By:     Eric H. Zagrans, Esq., of Counsel

**ROSEN SLOME MARDER LLP**
Attorneys for Appellee SMS Acquisition, Inc.
333 Earle Ovington Blvd, Suite 901
Uniondale, New York 11553
          By:     Adam L. Rosen, Esq., of Counsel

**MCKEE NELSON LLP**
Attorneys for the Appellee Consolidated Debtors
One Battery Park Plaza, 34th Floor
New York, New York 10004
          By:     Scott E. Eckas, Esq., of Counsel

**TERESE A. CAVANAGH**
**OFFICE OF THE UNITED STATES TRUSTEE**
560 Federal Plaza
Central Islip, New York 11722

**SPATT, District J.**

This case comes before the Court on an appeal filed by Robert A. Weitzel ("Weitzel" or the "appellant") from an order of United States Bankruptcy Judge Dorothy Eisenberg, dated August 15, 2006, denying Weitzel's motion to vacate a January 20, 2004 stipulation pursuant to Fed. R. Civ. P. 60(b)(6).

## I.     BACKGROUND

The following facts are derived from the parties' briefs and the bankruptcy record on appeal.  This appeal arises out of the Bankruptcy Court's approval of a settlement agreement in the Chapter 11 bankruptcy case of a Cleveland-based corporation called International Total Services, Inc. ("ITS") and several domestic and foreign subsidiaries of ITS (collectively, the "Debtors").  The appellant Weitzel is the former Chairman, Chief Executive Officer, and a Director of ITS.  On October 19, 1999, Weitzel resigned from these positions.  Following his resignation Weitzel remained a shareholder and creditor of the Debtors.

Prior to September 11, 2001, the Debtors were engaged in providing aviation services and commercial security services at airports across the United States.  The aviation division of ITS provided services such as pre-board screening of passengers

2

("Pre-Board Screening Services"), and also non-pre-board screening services including commercial security services, skycap services, baggage handling, de-icing of planes, shuttle bus service, exterior aircraft cleaning, ramp access services, bag-match operations, and electronic trace detection equipment management ("Non-Pre-board Screening Services"). On September 13, 2001, the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code. On September 21, 2001, an official committee of unsecured creditors ("Creditors Committee") was appointed. Due to difficulties in obtaining financing from creditors following the bankruptcy filing, ITS sought to sell its aviation division.

Shortly after September 11, 2001, the federal government established the Transportation Safety Administration ("TSA") to regulate all pre-board screening personnel at domestic airports beginning on February 17, 2002. Under the Aviation and Transportation Security Act, the TSA was given until November 1, 2002 to transfer the employment of pre-board screening personnel at U.S. airports to the federal government. During the interim period between February 17, 2002 and November 1, 2002, the federal government permitted private companies to bid for the right to conduct pre-board passenger screening work. ITS succeeding in obtaining contracts with the federal government to conduct pre-board screening at 102 domestic airports. Because of ITS' lack of operating capital, the government advanced $29.5 million to enable the Debtors to provide these services.

Notwithstanding the advanced funds from the government, ITS continued to lack operating capital and its creditors would not agree to finance the Debtors' other operations. Thus, the Debtors' commercial security division was sold to Willard M, LLC, pursuant to a sale approved by the Court on April 23, 2002. The Debtors' U.K. aviation division was sold to certain of the Debtors' senior United Kingdom employees. The Debtors' remaining operations consisted of its aviation division, which was (1) temporary Pre-Board Screening Services funded by the federal government; and (2) the Debtors' Non-Pre-Board security screening services.

On March 26, 2002, the Bankruptcy Court issued an order approving the sale of the Debtors' Non-Pre-board Screening Services to SMS Acquisitions, Inc. ("SMS"). The sale consisted of an Asset Purchase Agreement and a Transition Services Agreement, under which certain ITS managers became obligated to devote some of their time to working for SMS to assist with contracts SMS acquired under the Asset Purchase Agreement. The Transition Services Agreement also included a limited license to use the ITS name for certain purposes.

On June 18, 2002, the ("TSA") announced that it was implementing a pilot program to evaluate the feasibility of returning airport security to private firms. Under this program, TSA would enter into pre-board passenger screening contracts with private companies at five airports, including the airport in Kansas City, Missouri. The government solicited bids for this work from candidates that it deemed to be eligible.

ITS did not bid on any of the work at the five airports. SMS did participate in the bidding process utilizing the ITS name seeking pre-board screening contracts at three of the five airports chosen to participate in the pilot program. SMS won the contract for the Kansas City airport. On October 10, 2002, John DeMell, chief operating officer for ITS and one of the employees jointly employed by ITS and SMS, signed the Kansas City contract.

On December 6, 2002, the Debtors filed an Amended Plan of liquidation (the "Plan") in their bankruptcy proceeding. On January 13, 2002, Weitzel filed an objection to the Plan on various grounds. Among Weitzel's objections were that (1) SMS improperly used the "ITS"name to obtain pre-board security screening business, in violation of the Asset Purchase Agreement and the Transition Services Agreement; (2) the Debtors' management improperly assisted SMS in obtaining government contracts for pre-board screening business; and (3) that ITS was transferring its pre-board security screening business to SMS for no consideration.

At a hearing held on February 13, 2003, Weitzel agreed to withdraw his objections to the Plan and enter into a settlement. The parties signed a settlement agreement on February 27, 2003. As part of the settlement agreement, Weitzel expressly disclaimed any interest in any cause of action held by ITS. Weitzel agreed that all potential claims that the Debtors may have had, including claims against SMS, could only be brought, settled, or abandoned by the Debtors through their appointed

liquidating agent.  On February 27, 2003, the Bankruptcy Court entered an order confirming the Plan, which incorporated the ITS/Weitzel settlement agreement.

On April 7, 2003, SMS filed a motion for the allowance and payment of administrative claims.  On August 11, 2003, SMS withdrew the motion and filed an administrative proof of claim seeking the allowance and payment of four administrative claims allegedly in the sum of approximately $400,000 (the "SMS Claim").  The Debtors objected to the SMS claim, but on January 8, 2004, entered into an agreement with SMS resolving the disputes between them.  As part of the stipulation executed memorializing their agreement, SMS and ITS "unconditionally" released, waived and discharged all potential causes of action against each other.  On January 20, 2004, the Bankruptcy Court endorsed the settlement agreement.

On March 24, 2006, Weitzel made a motion pursuant to Fed. Bankr. R. 9024 and Fed. R. Civ. P. 60(b)(6) to vacate the January 20, 2004 stipulation and order.  Weitzel alleged that SMS misappropriated the Debtors' identity in procuring airport security contracts from the government; secured contracts from the Debtors for no consideration; and "tuck[ed] a general release of SMS" into the stipulation and failed to inform the Court that the stipulation extinguished not only SMS's claims for administrative expenses but claims belonging to the Debtors as well.

On June 13, 2006 and July 20, 2006, the Bankruptcy Court held hearings on Weitzel's motion to vacate.  In an order dated August 15, 2006, Judge Eisenberg

denied Weitzel's Rule 60(b) motion.  Judge Eisenberg determined that the motion to vacate was time-barred under Fed. R. Civ. P. 60(b)(1) through (3).  Also, Judge Eisenberg determined that Weitzel could not be granted relief under Fed. R. Civ. P. 60(b)(6) because his grounds for relief based on fraud were duplicative of claims under Fed. R. Civ. P. 60(b)(3), which were time-barred.  Furthermore, the Bankruptcy Court concluded that Weitzel's February 27, 2003 decision to settle his prior objections to the Plan precluded him from raising similar objections as grounds to vacate the stipulation pursuant to Fed. R. Civ. P. 60(b).  Finally, on the merits, Judge Eisenberg found that Weitzel failed to establish that a fraud on the Court was committed.  This appeal followed.

The appellant raise four issues on this appeal.  Specifically, Weitzel argues that the bankruptcy court abused its discretion in denying the motion to vacate the January 20, 2004 stipulation pursuant to Fed. R. Civ. P. 60(b)(6) because (1) the Bankruptcy Court relied upon inadmissible evidence in making its ruling; (2) the parties did not provide the Bankruptcy Court with sufficient information to approve a general release of SMS; (3) Weitzel established grounds to vacate the stipulation under Rule 60(b)(6); and (4) Weitzel established that the stipulation was a "fraud on the court."

## II.  DISCUSSION

An order determining a motion made pursuant to Fed. R. Civ. P. 60(b) is entitled to deference, and can be reversed only if there has been an abuse of discretion.

See <u>Grace v. Bank Leumi Trust Co. of NY</u>, 443 F.3d 180, 187 (2d Cir. 2006);

<u>Lawrence v. Wink (In re Lawrence)</u>, 293 F.3d 615, 623 (2d Cir. 2002); <u>Nemaizer v.</u>

<u>Baker</u>, 793 F.2d 58, 61-62 (2d Cir. 1986). "A district court abuses its discretion when

(1) its decision rests on an error of law (such as application of the wrong legal

principle) or a clearly erroneous factual finding, or (2) its decision-though not

necessarily the product of a legal error or a clearly erroneous factual finding-cannot be

located within the range of permissible decisions." <u>Vincenty v. Bloomberg</u>, 476 F.3d

74, 83 (2d Cir. 2007) (internal quotation marks and citations omitted).

Having reviewed the Bankruptcy Court's memorandum decision and the

appellate record in this case, the Court finds that the Bankruptcy Court's denial of

Weitzel's motion to vacate the stipulation did not constitute an abuse of discretion.

Judge Eisenberg's decision is well-reasoned, and amply supported by the record.

Furthermore, the appellant failed to identify any errors of law or clearly erroneous

factual findings made by the Bankruptcy Court.

Weitzel argues that if his Rule 60(b) motion were granted, it would negate the

general release granted to SMS and allow the bankruptcy estate to pursue its claims

against that company. However, the record in this case establishes that at the time of

the confirmation of the Plan, Weitzel voluntarily agreed to withdraw the same

objections to the Plan that he now seeks to rely on in having the Court vacate the

January 20, 2004 stipulation of settlement. Also, under the Plan, the Debtors'

liquidating agent retained sole authority to settle or prosecute any claims as "he deemed 'appropriate and in the [estates'] best interests." The Bankruptcy Court found that Wetizel relinquished his right to challenge the liquidating agent's decision-making with respect to claims against SMS. Weitzel's unhappiness with the liquidating agent's decisions regarding the release of SMS's claims was therefore insufficient to support a finding that the liquidating agent acted inappropriately in the discharge of his duties. The liquidating agent was under no obligation to notify Weitzel of its intention to release the SMS claims, as Weitzel did not request notice in accordance with the terms of the plan. Finally, the language of the releases was conspicuous, occupying the fourth paragraph of the stipulation, which consisted of only four pages and seven decretal paragraphs.

In sum, the Court finds that Judge Eisenberg acted within her discretion in finding, among other things, that Weitzel could not be granted relief under Fed. R. Civ. P. 60(b)(6). Accordingly, the order of United States Bankruptcy Judge Dorothy Eisenberg, dated August 15, 2006, is affirmed.

## III.   CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the order of the Bankruptcy Court, dated August 15, 2006, denying Weitzel's motion to vacate a January 20, 2004 stipulation pursuant to Fed. R. Civ. P. 60(b)(6), is affirmed; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED**.

Dated: Central Islip, New York
       September 10, 2007

                                    _/s/ Arthur D. Spatt_____
                                      ARTHUR D. SPATT
                                   United States District Judge